**RAILWAY LABOR EXECUTIVES' ASSOCIATION, BROTHERHOOD OF LOCOMOTIVE ENGINEERS AND CONGRESS OF RAILWAY UNIONS, Plaintiffs-Appellants,**

v.

**Thomas F. PATTON and Ralph S. Tyler, Jr., Trustees of the Erie Lackawanna Railway Company, Debtor, Defendants-Appellees.**

**No. 73–1713.**

United States Court of Appeals, Sixth Circuit.

Argued Jan. 28, 1974.

Decided July 5, 1974.

Harold A. Ross, Cleveland, Ohio, for plaintiffs-appellants; Ross & Kraushaar, Cleveland, Ohio, Edward J. Hickey, Jr., William J. Hickey, Geoffrey N. Zeh, Mulholland, Hickey & Lyman, James L. Highsaw, William G. Mahoney, Highsaw & Mahoney, Washington, D. C., on brief.

Richard F. Stevens, Cleveland, Ohio, for defendants-appellees; J. Richard Hamilton, Gary L. Bryenton, Baker, Hostetler & Patterson, Cleveland, Ohio, on brief.

Before PHILLIPS, Chief Judge, and EDWARDS and PECK, Circuit Judges.

EDWARDS, Circuit Judge.

This is an appeal by various of the railway labor unions from an ex parte order, subsequently reaffirmed after hearing, entered by a District Judge in the United States District Court for the Northern District of Ohio, Eastern Division, acting as a Reorganization Court. This order provided for the suspension of previously negotiated employee protection agreements and the impoundment of funds which would have otherwise been paid to the employees.

This action was taken on petition of the Trustees of the debtor (Erie Lackawanna Railway). The Trustees had previously filed for reconsideration and suspension of these agreements before the Interstate Commerce Commission. Since the District Court's action, the ICC has now heard and decided this petition, finding that "The record in this proceeding fails to provide a basis upon which the Trustees' petition may be granted." —— I.C.C. ——, Finance Docket No. 21510 (decided April 29, 1974). This decision undercuts the basis upon which the District Court order was entered.

A brief history of this matter indicates that on June 9, 1967, the Erie Lackawanna Railway Company was authorized to be included in the Norfolk and Western Railway Company System by an order issued by the ICC. Subsequently, the Erie Lackawanna Railway Company (debtor) and the bargaining representatives of its employees entered into protection agreements on August 19 and August 29, 1968, which required the debtor to guarantee that none of its employees would be deprived of employment or placed in a worse position with respect to compensation, rules, working conditions, fringe benefits or rights and privileges pertaining thereto at any time during their employment. The unions argue that these agreements were *quid pro quo* for certain changes of operating conditions as a result of the merger with the Norfolk and Western which would have the effect of more economi-

**36**

cal operation with less manpower for the Erie Lackawanna.

Subsequently, on June 26, 1972, the debtor filed a reorganization petition under § 77 of the Bankruptcy Act, 11 U.S.C. § 205 (1970), and on March 20, 1973, the Trustees of the debtor filed a petition for reconsideration of the employee protection agreements before the ICC and the petition before the District Court for the suspension of wage payments required by those agreements.

■ At oral argument of this appeal the Trustees claimed that their petition before the District Court was designed to preserve the status quo pending determination by the ICC of the petition to reconsider and suspend the protection agreements. Now, however, the Trustees assert their intention to seek reconsideration of the adverse decision of April 29, 1974, of the ICC and seek delay of this court's action on this appeal.

Section 77(n) of the Bankruptcy Act, 11 U.S.C. § 205(n) (1970), says in part:

"No judge or trustee acting under this title shall change the wages or working conditions of railroad employees except in the manner prescribed in sections 151 to 163 of Title 45, as amended June 21, 1934, or as they may be hereafter amended."

Clearly, the prescribed procedure was not followed in this case.

■ Further, the District Judge took no testimony on the question of irreparable harm either from the railroad trustees, who proffered none, or from the labor unions, which did. We do not believe that the District Court could properly wield its equitable powers (assuming they were not restricted by § 77(n)) without having heard testimony on such problems bearing on equity as what represented the status quo and what the effect of suspension of the agreements would be. In two recent cases this court has reversed orders entered under the court's equitable powers for failure to take evidence and make findings of fact on irreparable injury. Detroit Newspaper Publishers Ass'n v.

Detroit Typographical Union, 471 F.2d 872 (6th Cir. 1972), cert. denied, 411 U. S. 967, 93 S.Ct. 2149, 36 L.Ed.2d 687 (1973); North American Coal Corp. v. Local 2262, UMW, 497 F.2d 460 (6th Cir. 1974) (Decided May 10, 1974).

"The fatal defects in the decision of the District Court were: (1) its failure to weigh the equities between the parties and to determine whether the employer would suffer more from the granting of the injunction than the Union from its denial, as required by Boys Markets, Inc. v. Retail Clerks Union, Local 770, 398 U.S. 235, 254, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970); and (2) the absence of a showing of irreparable harm to employees as mandated by *Boys Markets*." Detroit Newspaper Publishers Ass'n v. Detroit Typographical Union, supra at 875.

Note a similar holding in North American Coal, supra, where the parties were reversed.

The judgment of the District Court is reversed and Orders No. 71 and 101 of the Reorganization Court are vacated.